EXHIBIT 1

**INDEX OF DOCUMENTS FILED IN**
**NAVAJO COUNTY SUPERIOR COURT, ARIZONA**
**NO. S0900CV202000169**

|     | Document | Date Filed |
| --- | --- | --- |
| 1. | Complaint | May 20, 2020 |
| 2. | Summons | May 29, 2020 |
| 3. | Certificate of Compulsory Arbitration | May 20, 2020 |
| 4. | Demand for Jury Trial | May 20, 2020 |
| 5. | Plaintiffs' First Set of Discovery Requests Upon Defendant General Motors LLC (served with summons and complaint) | May 20, 2020 |
| 6. | Defendants Jason and Darlene Muders' Answer to Plaintiffs' Complaint | June 23, 2020 |
| 7. | Defendants Jason and Darlene Muder's Demand for Jury Trial | June 23, 2020 |

1   G. Lynn Shumway (011714)
     shumway@carsafetylaw.com
2   **SHUMWAY LAW PLLC**
     4647 N. 32nd Street, Suite 125
3   Phoenix, Arizona  85018-3345
     Telephone:  602.795.3720
4   Facsimile  :  602.795.3728

5

6   Brent Ghelfi (011491)
     BrentGhelfi@GhelfiLawGroup.com
7   **GHELFI LAW GROUP, PLLC**
     4647 N. 32nd Street, Suite 125
8   Phoenix, Arizona  85018-3345
     Telephone :  602.318.3935

9

10   John E Kelly (024716)
     john@kellylawteam.com
11   **KELLY LAW TEAM, PLLC**
     1 East Washington Street, Suite 1520
12   Phoenix, Arizona 85004
     Telephone: 602.283.4122
13   Facsimile: 602.281.6881

14   *Attorneys for Plaintiffs*

15      **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

16           **IN AND FOR THE COUNTY OF NAVAJO**

17

18   **Kyle Spencer**, an individual and statutory
19   beneficiary of Serenity Haven Spencer; and
     **Dominecia Calderon**, an individual and
20   statutory beneficiary of Serenity Haven
     Spencer,
21

22           Plaintiffs,

23     vs.

24

25   **General Motors LLC**, a Delaware limited
     liability company; and
26   **Darlene Ladonna Muder**, an individual, and
     **Jason Muder**, husband and wife,
27

28         Defendants.

No. S0900CV202000169

**SUMMONS**

1

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

1

2

**State of Arizona to Defendant:   General Motors, LLC, a Delaware limited liability company**

3

4

    YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service.  If served out of the State of Arizona--whether by direct service, by registered or certified mail, or by publication--you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service.  Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director.  Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication.  Direct service is complete with made.  Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. RCP 4; A.R.S. §§ 20-222, 28-502, 28-503.

5

6

7

8

9

10

11

12

13

    YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

14

15

16

    YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve, a copy of any Answer or response upon the Plaintiff's attorney. RCP 10(D); A.R.S § 12-311; RCP 5.

17

18

19

    REQUESTS FOR REASONABLE ACCOMODATION FOR PERSONS MADE TO THIS DIVISION ASSIGNED TO THE CASE BY THE PARTY NEEDING ACCOMODATION OR HIS/HER COUNSEL AT LEAST THREE (3) JUDICIAL DAYS IN ADVANCE OF A SCHEDULED PROCEEDING. (2) REQUESTS FOR AN INTERPRETER FOR PERSONS WITH LIMITED ENGLISH PROFICIENCY MUST BE MADE TO THE DIVISION ASSIGNED TO THE CASE BY THE PARTY NEEDING THE INTERPRETER AND/OR TRANSLATOR OR HIS/HER COUNSEL AT LEAST TEN (10) JUDICIAL DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.

20

21

22

23

24

25

26

27

28

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

The names and addresses of Plaintiffs' attorneys are:

G. Lynn Shumway (011714)
shumway@carsafetylaw.com
**SHUMWAY LAW PLLC**
4647 N. 32nd Street, Suite 125
Phoenix, Arizona  85018-3345
Telephone:  602.795.3720
Facsimile  :  602.795.3728

Brent Ghelfi (011491)
BrentGhelfi@GhelfiLawGroup.com
**GHELFI LAW GROUP, PLLC**
4647 N. 32nd Street, Suite 125
Phoenix, Arizona  85018-3345
Telephone :  602.318.3935

John E Kelly (024716)
john@kellylawteam.com
**KELLY LAW TEAM, PLLC**
1 East Washington Street, Suite 1520
Phoenix, Arizona 85004
Telephone: 602.283.4122
Facsimile: 602.281.6881

SIGNED AND SEALED this date: _May 29th 2020_

_____
Clerk

By _____
Deputy Clerk

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona  85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

3

FILED
Deanne Romo
CLERK, SUPERIOR COURT
05/20/2020  2:24PM
BY: TBAKURZA
DEPUTY

Case No.: S0900CV202000169
HON. ROBERT HIGGINS

1   G. Lynn Shumway (011714)
    shumway@carsafetylaw.com
2   **SHUMWAY LAW PLLC**
    4647 N. 32nd Street, Suite 125
3   Phoenix, Arizona  85018-3345
    Telephone:  602.795.3720
4   Facsimile    :  602.795.3728

5   Brent Ghelfi (011491)
    BrentGhelfi@GhelfiLawGroup.com
6   **GHELFI LAW GROUP, PLLC**
    4647 N. 32nd Street, Suite 125
7   Phoenix, Arizona  85018-3345
    Telephone  :  602.318.3935
8

9   John E Kelly (024716)
    john@kellylawteam.com
10  **KELLY LAW TEAM, PLLC**
    1 East Washington Street, Suite 1520
11  Phoenix, Arizona 85004
    Telephone: 602.283.4122
12  Facsimile: 602.281.6881

13  *Attorneys for Plaintiffs*

14            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15                **IN AND FOR THE COUNTY OF NAVAJO**

16

17  **Kyle Spencer**, an individual and statutory       No. _____
18  beneficiary of Serenity Haven Spencer; and
    **Dominecia Calderon**, an individual and
19  statutory beneficiary of Serenity Haven            **COMPLAINT**
    Spencer,
20                                                     (Tort: Products liability)
21              Plaintiffs,

22      vs.                                            **(Tier 3)**
23
    **General Motors LLC**, a Delaware limited
24  liability company; and
    **Darlene Ladonna Muder**, an individual, and
25  **Jason Muder**, husband and wife,
26
                Defendants.
27

28                                    1

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona  85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ◆ Facsimile: (602) 795-3728

Plaintiffs Kyle Spencer and Dominecia Calderon submit their Complaint against Defendants as follows:

## Parties

1.  Plaintiff Kyle Spencer is an individual and resident of Navajo County, Arizona.

2.  He is the biological father of Serenity Haven Spencer, deceased.

3.  Plaintiff Dominecia Calderon is an individual and resident of Navajo County, Arizona.

4.  She is the biological mother of Serenity Haven Spencer, deceased.

5.  Serenity Haven Spencer passed away on November 2, 2019, in an automobile collision, at the age of three.



6.  Defendant General Motors LLC ("General Motors") is a foreign limited liability company organized and formed under the laws of Delaware, doing business in Arizona.

2

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

7.      General Motors LLC is and has been engaged in the design, manufacture and sale of automobiles through a nationwide network of subsidiaries and dealerships doing business in the State of Arizona.

8.      As used herein, General Motors includes all predecessor corporations and entities.

9.      Defendant Darlene Ladonna Muder is an individual and, upon information and belief, a resident of the State of New Mexico.

10.     Defendant Jason Muder is, upon information and belief, the husband of Defendant Darlene Ladonna Muder. He is named in this matter solely to comply with the community property laws of the States of Arizona and/or New Mexico. The acts or omissions alleged as to Darlene Ladonna Muder were conducted in furtherance of the marital community.

## Jurisdiction and Venue

11.     The collision at issue occurred on November 2, 2019, in Navajo County, Arizona.

12.     Defendant Darlene Ladonna Muder was intentionally and purposefully in Arizona at the time of the collision, and also has ongoing systemic contacts with the State of Arizona.

13.     This Court has jurisdiction of the parties and subject matter.

14.     Venue is proper in this Court.

3

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ● Facsimile: (602) 795-3728

**Factual Background**

### 1.    The Vehicles

**15.**    This is a products liability matter, stemming from an automobile crash that occurred on November 2, 2019.

**16.**    There were two vehicles involved in the crash, a 2019 Toyota Corolla and a 2018 GMC Sierra. The subject of this case is the 2018 GMC Sierra, more specifically, a white 2018 GMC Sierra K2600 SLT pickup truck, Vehicle Identification Number 1GT12TEY6JF185507 (the "Vehicle").

**17.**    General Motors LLC manufactured and distributed this Vehicle.

**18.**    General Motors offered an Enhanced Driver Alert Package as an optional feature. However, this option was not installed on the Vehicle. Thus, it was not equipped with any forward collision avoidance technology, such as forward collision warning or automatic emergency braking. The absence of this life-saving technology is a subject of this case.

### 2.    Forward Collision Avoidance Technology

**19.**    Rear-end collisions are the most common form of automobile collision or accident, generally accounting for approximately one third of automobile accidents in the United States. *NTSB Special Investigation Report, "Vehicle- And Infrastructure Based Technology for Prevention of Rear-End Collisions (May 2001)*, at 1.

**20.**    According to a 2015 study by the National Transportation Safety Administration (NTSB), rear-end collisions account for "almost half of all two-vehicle crashes." *2015 NTSB Report*, at. 6.

4

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

21.    The primary cause of rear-end collisions is driver distraction. *Id.* "87 percent of rear-end crashes involved some degree of driver inattention." *Id.*

22.    In an oral statement given on June 8, 2015, NTSB Chairman Hart stated that there were 1.7 million rear end collisions in 2012, resulting in more than 1,700 deaths and 500,000 injures.

23.    Forward collision warning ("FCW") was initially developed in the early to mid-1990s.

24.    FCW is a simple technology in which a driver receives some form of alert when a danger, such as a stopped or slow-moving vehicle, is detected ahead.

25.    Some trucks had some form of FCW installed by the mid-1990s, nearly twenty-five years ago.

26.    By the late 1990s, Eaton VORAD, a supplier of FCW components in the 1990s, was actively marketing its FCW system to truck companies throughout the United States, with "over 2 billion miles of over-the-road experience" by the summer of 1999. *2001 NTSB Special Investigation Report,* at 22.

27.    Automatic emergency braking ("AEB") is an automated follow-up to forward collision warning.

28.    AEB has two related sub-technologies. The first is dynamic brake support (DBS), which activates if a driver brakes before an impending collision but does not brake hard enough to prevent the collision. DBS automatically supplements the driver's braking in an effort to avoid the crash.

5

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

29.     A second AEB technology is crash imminent braking (CIB). If a driver does not brake at all with a potential impending crash CIB automatically applies the vehicle's brakes to slow or stop the car, avoiding the crash or reducing its severity.

30.     FCW, DBS, and CIB are collectively referred to as Forward Collision Avoidance Technologies (FCAT).

31.     Since 1995, federal agencies urged carmakers to adopt FCAT technology.

32.     In 1995, following a five-fatality event investigation, the NTSB encouraged the prompt adoption of FCW, issuing numerous recommendations to advance it. *2001 NTSB Special Investigator Report*, at 5-6 (summarizing 1995 recommendations).

33.     In 1996, the National Highway Traffic Safety Administration (NHTSA)—a regulatory agency within the Department of Transportation—conducted its first cost/benefit study of crash avoidance systems, including FCW, noting that such a study was appropriate at the time because of "their technical maturity and the availability of system prototypes." NHTSA concluded that such systems should be installed if their cost was anything less than $1,500. "Preliminary Assessment of Crash Avoidance Systems Benefits," *NHTSA Benefits Working Group* (October 1996).

34.     In 2001, the NTSB issued another seminal report regarding forward collision avoidance technologies, urging both other governmental agencies and auto/truck manufacturers to implement this technology as rapidly as possible. *2001 NTSB Special Investigation Report*.

35.     This report was prompted by a fatal truck/car collision near Moriarty, New Mexico, in January of 1999. *Id.* at 7-8.

6

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

36.    The NTSB prepared two simulations, the first showing what actually happened in the collision (which can be viewed here), and the second showing how the truck driver easily avoided the collision with FCW (this animation viewable here). *2001 NTSB Special Investigator Report,* at 27.

37.    In this report, the NTSB made a specific plea to automakers:

> Develop and implement, in cooperation with the National Highway Traffic Safety Administration, the Federal Highway Administration, the Intelligent Transportation Society of America, and the truck and motorcoach manufacturers, a program to inform the public and commercial drivers on the benefits, use, and effectiveness of collision warning systems and adaptive cruise control.

*2001 NTSB Special Investigator Report,* at 39.

38.    General Motors responded to the NTSB's request in an email to NTSB dated October 3, 2001—18 years before the crash at issue. General Motors stated in part:

> GM is promoting the application of adaptive cruise control and forward collision warning systems through its advanced technology development process and its product implementation plans.... GM concurs with the NTSB recommendation regarding development of education materials for these technologies. As ACC and FCW are introduced into the stream of commerce, they will be accompanied by the appropriate system-specific descriptive materials. GM has prepared and distributed such materials for other avoidance technologies.....

*General Motors 10/3/2001 Email to NTSB.*

39.    General Motors sent a follow-up email to the NTSB in July of 2011:

> General Motors is committed to providing continuous safety; before, during and after a crash. Crash avoidance technologies align with the "before" phase and GM continues to develop and offer features in our vehicles that offer customer benefit and help drivers prevent or avoid crashes.... Forward Collision Alert with Adaptive Cruise Control (radar-based): The radar-based Forward Collision Alert/Adaptive Cruise Control system warns drivers with a flashing visual display if they are tailgating, and is accompanied by beeps if

7

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

they are approaching a vehicle directly ahead too quickly.... Forward Collision Alert (camerabased): The camera-based Forward Collision Alert system warns drivers with a visual flashing display if they are tailgating, and is accompanied by beeps if they are approaching a vehicle directly ahead too quickly. In addition to the crash avoidance technologies listed above, GM continues research and participation with industry forums on the development of vehicle-to-vehicle safety applications. GM recognizes the importance of intuitive crash avoidance technologies using design execution based upon Human Vehicle Interface (HVI) and Human Machine Interface (HMI) research. GM also provides consumer information through system-specific descriptions in the owner's manual. In some cases, GM may also provide additional consumer information such as a visible hang tag in the vehicle. For example, on the 2012 MY GMC Terrain and 2012 MY Chevrolet Equinox, a hang tag is provided that clearly explains the Forward Collision Warning and Lane Departure Warning active safety features. GM continues to educate the public on the benefits, use, and effectiveness of our crash avoidance technologies.

*General Motors 7/1/2011 Email to NTSB.*

**40.** Upon information and belief, except for information in its owner's manuals and visible hang tags for vehicles that already had the technology installed, GM never developed or implemented "a program to inform the public and commercial drivers on the benefits, use, and effectiveness of collision warning systems and adaptive cruise control."

**41.** Meanwhile, in March 2006 NHTSA provided automakers with another comprehensive risk/benefit study of forward collision avoidance technologies, demonstrating their benefits. "Evaluation of an Automotive Rear-End Collision Avoidance System," National Highway Transportation Administration (March 2006).

**42.** In 2008, NHTSA included FCW in its New Car Assessment Program ("NCAP"). When adding forward collision avoidance technology to its NCAP, NHTSA again declared forward collision avoidance to be a "mature" technology. "Consumer

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

Information; New Car Assessment Program," National Highway Traffic Safety Administration, Fed.Reg., 73 Fed.Reg. 40016 (July 11, 2008).

43.　　In January 2012, NHTSA issued a final rule, adding a vehicle's addition of FCW to its New Car Assessment Program (NCAP). 76 Fed. Reg. 45453 (July 29, 2011) (49 C.F.R. 575.302).

44.　　In his June 8, 2015, statement, NTSB Chairman Hart noted of the 1,700 deaths and 500,000 injuries from rear-end collisions, "more than 80% could have been prevented or mitigated with optimal forward collision technology."

45.　　In 2015, the NTSB revisited the issue of forward collision avoidance systems due to the "lack of progress:"

> The National Transportation Safety Board (NTSB) has an extensive history of investigating rear-end crashes and has encouraged technological countermeasures since 1995. To date, the NTSB has issued 12 recommendations pertaining to this safety issue....
>
> Due to a lack of progress in the implementation of NTSB recommendations intended to mitigate or prevent rear-end crashes, the recent technological advancements in collision avoidance technologies, and the continued prevalence of rear-end crashes, the NTSB is revisiting the topic of rear-end crash prevention.

*2015 NTSB Special Report*, at 6

### 3.　　Optioning safety

46.　　When automobile manufacturers, including General Motors, did begin offering FCAT on its vehicles, they typically offered it only as (1) an optional feature, (2) available only on higher end models and vehicle trim levels.

9

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

47. In short, automakers (including General Motors) used these safety components as "product differentiation" features and/or as features to increase the gross profit on each sale.

48. Upon information and belief, General Motors has studies, spreadsheets, analyses and/or the like denominating expected take rates for these technologies and the profit contribution per vehicle where the option is purchased.

49. The NTSB has condemned the industry-wide practice of making these technologies a "product differentiation" feature, something used to differentiate high-end vehicles from mid-range and lower-end vehicles.

50. The NTSB has stated as follows: "The NTSB believes that not only should more automakers offer collision avoidance technologies as standard features in their vehicles, but that consumers should not have to purchase a luxury option package to get the safety benefits of these technologies." *NTSB Most Wanted List "Promote Availability Of Collision Avoidance Technologies in Highway Vehicles."*

51. In his June 8, 2015, oral statement, NTSB Chairman Hart stated: "Many manufacturers only offer this safety system within a luxury option package. But safety should be a basic feature rather than an option that we have to purchase and that only the wealthier buyer can afford."

52. In June of 2017, the Department of Transportation submitted a report to both Congress and the National Transportation Safety Board, outlining its various safety initiatives for its various sub-agencies, including NHTSA. In this report, NHTSA outlined its efforts to "ensure[] that this lifesaving technology is incorporated into vehicles faster than

10

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

through traditional regulatory channels, *and not just as a high-end luxury option*." *DOT Report to Congress and National Transportation Safety Board*, at 7 (italics added).

### 4.  The GMC Sierra Pickup Truck

**53.**    The GMC Sierra pickup truck shares the same platform and basic design as the Chevrolet Silverado pickup truck.

**54.**    The 2015 GMC Sierra pickup truck did not offer FCAT as either standard or optional equipment on any trim level.

**55.**    General Motors did offer FCAT as an option on its companion vehicle to the GMC Sierra, the Chevrolet Silverado, in model year 2015.

**56.**    General Motors first offered forward collision avoidance technologies as an optional feature on its 2016 model year Sierra pickup trucks.

**57.**    General Motors reported to NHTSA as part of NCAP that forward collision warning was an optional feature on the 2016 Sierra.

**58.**    NHTSA noted that this safety technology was an optional feature in its NCAP report on the 2016 GMC Sierra.

**59.**    General Motors offered four different trim levels for its 2018 GMC Sierra: (1) the base model Sierra, (2) the SLE, (3) the SLT, and (4) the Denali.

**60.**    The base curb weight for a 2018 GMC Sierra pickup ranged from 4,696 pounds for a regular cab, 2-wheel drive, to 5,461 pounds for a 4-wheel drive crew cab.

**61.**    These curb weights are considerably heavier than most standard sedans, such as the base curb weight of the Toyota Camry of 3,296 pounds.

11

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

62.     The 2018 GMC Sierra also included, as a standard feature (with the option for an 8-inch display in certain trim levels), a 7-inch full color display screen next to the vehicle's steering wheel, as pictured here from General Motors' product brochure:



63.     In the product brochure, General Motors described this system as follows:

12

**64.**     A June 2013 study sponsored by the AAA Foundation for Traffic Safety and conducted by several University of Utah researchers, "Measuring Cognitive Distraction in the Automobile," concluded that voice-activated systems such as that installed in the GMC Sierra pose significant risks of driver distraction:

> [T]here are significant impairments to driving that stem from the diversion of attention from the task of operating a motor vehicle, and that the impairments to driving are directly related to the cognitive workload of these in-vehicle activities. Moreover, compared to the other activities studied (e.g., listening to the radio, conversing with passengers, etc.) we found that interacting with the speech-to-text system was the most cognitively distracting. This clearly suggests that the adoption of voice-based systems in the vehicle may have unintended consequences that adversely affect traffic safety.

*Id.* at 30.

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

65. General Motors offered FCAT on the 2018 GMC Sierra only as an optional feature, available for purchase only on the SLE and SLT trim levels. General Motors' press release regarding the 2018 GMC Sierra explained:

> Enhanced Driver Alert Package is available on SLE and SLT. Content includes Forward Collision Alert, Safety Alert Driver Seat, IntelliBeam headlamps with automatic high-beam control, Lane Keep Assist with Lane Departure Warning, Front and Rear Park Assist and Low Speed Forward Automatic Braking

66. Plaintiffs believe that the consumer cost for this optional "Enhanced Driver Alert Package" was $945.00.

67. For a consumer to obtain these safety features, the consumer had to purchase an upper level trim level—the SLE or SLT—and then pay an additional cost for the safety upgrade package.

### 5. The Collision

68. On the afternoon of November 2, 2019, Defendant Darlene Ladonna Muder was driving the Vehicle northbound along Bourdon Ranch Road in White Mountain Lake, Arizona.

69. Plaintiffs were also traveling northbound along Bourdon Ranch Road in their 2019 Toyota Corolla. Their daughter, Serenity, was properly restrained in an infant seat in the vehicle's backseat.

70. Plaintiff Dominecia Calderon was driving.

71. Defendant Darlene Ladonna Muder's Vehicle was traveling behind the Corolla.

72. Plaintiff Calderon slowed to make a left turn onto a side street.

14

**73.** Admittedly distracted by the Infotainment system that General Motors had installed in the Sierra, Defendant Darlene Ladonna Muder crashed into the rear of the Plaintiffs' vehicle.

**74.** A collision between a relatively heavy vehicle such as a full-size pickup truck and a smaller sedan can be referred to as a "vehicle mismatch" collision.

**75.** Vehicle mismatch collisions often result in far more significant injuries to the occupants of the smaller vehicle than the larger.

**76.** That is what occurred in the present collision. Serenity Spencer perished as a result of injuries sustained in the collision.

**77.** The following two photographs, taken by Navajo County Sheriff's deputies, demonstrate the result of this vehicle mismatch collision. First, the Spencer vehicle:



LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

**78.**   Second, the GMC Sierra, with far less damage:



**79.**   In fact, as a result of the vehicle mismatch and design of the GMC Sierra, the collision resulted in the GMC Sierra attempting to ride over the Toyota Corolla, much like a monster truck driving over vehicles at a show.

**80.**   An eyewitness to the collision observed this phenomenon, stating that "he saw the white truck (V1) hit the car and saw the white truck raise up."

**81.**   The investigating deputies similarly concluded:

> The ACM [Airbag Control Module] reported V1 impacted V2 at 45 MPH, V2 was at a full stop. Due to V1's higher front bumper being a three-quarter ton four-wheel drive truck, it drove over V2's lower rear bumper. V1 travelled up the trunk of V2 and crushed through to the C-pillar collapsing the roof forward and down over the back seat of V2. There was major contact damage to the rear trunk, back seat compartment and induced damage to both rear passenger doors. V2's rear bumper was still intact although the rear plastic was stripped forward.

> This evidence verifies one witness's report he saw the white truck "raise up" because V1 was climbing onto the rear and top of V2. This would also

16

corroborate the autopsy report for the rear passenger stating that the cause of death was blunt force trauma.

*Navajo County Sheriff's Office Report*, at 71.

82.     A 2019 study by the Insurance Institute for Highway Safety noted:

Vehicle incompatibility refers to energy mismanagement during a crash that produces an uneven distribution of injury risk across the 2 vehicles involved. Many factors influence the degree to which 2 vehicles are incompatible, but one key factor is vehicle weight. Heavier vehicles, in addition to being safer for their drivers, are more dangerous to the drivers of vehicles that crash with them.

*Trends in aggressivity and driver risk for cars, SUVs, and pickups: Vehicle incompatibility from 1989 to 2016*, TRAFFIC INJURY PREVENTION 2019, Vol. 20, No. S1, S92-S96 (citations omitted).

83.     The authors further noted:

The most recent examination by the IIHS found that pickups remain disproportionately likely to inflict injury on drivers of crash partner vehicles. Other research has found similar results, with one such study finding that full-size pickups were more than 3 times as likely to kill a driver of a crash partner compared with a mid-sized car.

*Id.*

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

17

84.    Notably, the weight ratio between pickup trucks and sedans continues to rise, as pickups become larger:



**Figure  2.** Average  curb  weight  ratio  between  case  and  car  partner vehicles, 1989–2016.

*Id.*

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728



**Figure 3.** Partner death rate of 3,500- to 4,000-pound SUVs and pickups relative to partner death rate of similar-weight cars, 1989–2016. Solid lines represent the same effect for the whole sample (i.e., data from Figure 1).

*Id.*

85.    As a result, pickup trucks continue to have "partner death rates," *i.e.* death rates for the other vehicle involved in the collision, at significantly higher rates than any the other types of passenger vehicles (car and SUVs).

86.    Defendant Darlene Ladonna Muder stated that she was distracted by the "Infotainment System" at the time of the collision, according to the Navajo County Sheriff's report: "Darlene stated she locked at her clock, located on her vehicle on board computer screen in the center console, for just a moment." *Navajo County Sheriff's Office Report*, at 4-5.

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

87.    This Navajo County Sheriff's Office photograph shows the Infotainment system in the Vehicle:



88.    Neither Plaintiffs nor Serenity Spencer had any role in the decision whether to equip the Vehicle with the Enhanced Driver Alert Package.

89.    If the Vehicle had been equipped with the Enhanced Driver Alert Package, an alert would have sounded prior to the collision and Defendant Darlene Ladonna Muder would have been able to avoid the collision. At the very least, Defendant Muder would have been able to engage in sufficient braking or steering to mitigate the severity of the collision.

90.    Under either circumstance, Serenity would not have passed away in the collision.

91.    If the Vehicle had been equipped with Automatic Emergency Braking (in addition to Forward Collision Warning), the subsequent braking or steering would have

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

20

prevented the collision. At the very least, the braking or steering would have been sufficient to mitigate the severity of the collision.

92.   Under either circumstance, Serenity would not have passed away in the collision.

93.   If the Vehicle had been designed to mitigate against the damages involved in a vehicle mismatch collision and, more specifically, to prevent the tendency of the heavier vehicle to "ride over" the smaller sedan during a rear-end collision, Serenity Spencer would not have passed away.

94.   Serenity was Plaintiffs' only child.



LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

21

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

### Claims For Relief

### Count 1

### Strict Liability – Design Defect

### As Against Defendant General Motors LLC

**95.**   Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

**96.**   Defendant General Motors is liable to Plaintiffs because of the defective and unreasonably dangerous design of the 2018 GMC Sierra, specifically, General Motors' failure to install technologically and financially feasible forward collision avoidance technologies.

**97.**   The benefits of a vehicle equipped with the 2018 GMC Sierra Enhanced Driver Safety Package outweighs any harmful characteristics and/or consequences of a vehicle so equipped.

**98.**   The benefits of a vehicle equipped with the Automatic Emergency Braking outweighs any harmful characteristics and/or consequences of a vehicle so equipped.

**99.**   The Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.

**100.**   The benefits of a vehicle designed to mitigate the known dangerous aspects of a vehicle mismatch collision between a GMC Sierra and sedans outweigh any harmful characteristics and/or consequences of such a design.

**101.**   As a direct result of General Motors' dangerous and defective design of the 2018 GMC Sierra, Serenity Spencer died.

22

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

**102.**    Plaintiffs have experienced extreme grief, emotional distress, and loss of enjoyment of life as a result of Serenity Spencer's death.

**Count 2**

**Negligence**

**As Against Defendant General Motors**

**103.**    Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

**104.**    Defendant General Motors owed the consuming public and those coming into contact with its vehicles a duty to design reasonably safe vehicles.

**105.**    Defendant General Motors knew, or reasonably should have known, that (1) rear-end collisions kill and/or injure hundreds of thousands of persons on United States roadways annually; (2) that distracted drivers is a leading cause of rear-end collisions; (3) that the display monitor next to the steering wheel and its features increase the risk of driver distraction; and (4) that many consumers of larger model pickup trucks, such as the Sierra, believe that the vehicle's weight and size, coupled with seatbelts and airbags, provide all of the safety protection that the consumer needs.

**106.**    Defendant General Motors knew, or reasonably should have known, that the full-size GMC Sierra posed a significantly high risk of causing serious injury or death in collisions with sedans as compared with sedan-to-sedan collisions, and that the design of the Vehicle failed to mitigate against this significant risk.

**107.**    Defendant General Motors knew, or reasonably should have known, that installation of forward collision avoidance technologies in full-sized pickups such as the

23

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

2018 GMC Sierra significantly decreased the risk that the GMC Sierra would become involved in a rear-end, vehicle mismatch, collisions.

108.    Defendant General Motors knew, or reasonably should have known, that forward collision avoidance technologies are not designed to protect solely the occupants of the equipped vehicle, but also to protect other vehicles that may be at risk from a rear-end collision.

109.    With this knowledge, Defendant General Motors breached its duty of care by failing to make its Enhanced Driver Safety Package standard equipment on its 2018 GMC Sierra pickup trucks.

110.    With this knowledge, Defendant General Motors further breached its duty of care by failing to install Automatic Emergency Braking technology on its 2018 GMC Sierra pickup trucks.

111.    With this knowledge, Defendant General Motors breached its duty of care by failing to design the Vehicle so that it did not ride up on vehicles it strikes.

112.    As a direct result of General Motors' negligent design of the 2018 GMC Sierra, Serenity Spencer died.

113.    Plaintiffs have experienced extreme grief, emotional distress, and loss of enjoyment of life as a result of Serenity Spencer's death.

**Count 3**

**Negligence**

**As Against Defendant Muder**

114.    Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

115.    While distracted by General Motors' Infotainment screen in the Vehicle, and without the benefits of General Motors' Enhanced Driver Safety Package or Automatic Emergency Braking, Defendant Darlene Ladonna Muder collided with the Spencer vehicle, resulting in Serenity Spencer's death.

116.    Plaintiffs have experienced extreme grief, emotional distress, and loss of enjoyment of life as a result of Serenity Spencer's death.

## Count 4

## Wrongful Death

## As Against All Defendants

117.    Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

118.    As a direct result of the wrongful conduct by Defendants as alleged herein, Serenity Spencer died.

119.    Plaintiffs, as the parents of Serenity Spencer, have experienced extreme grief, emotional distress, and loss of enjoyment of life as a result of Serenity Spencer's death. The sudden and violent nature of Serenity Spencer's death further exacerbated the family's grief and emotional distress.

120.    Pursuant to Arizona Revised Statutes § 12-611, et seq., the surviving parents of Serenity Spencer are entitled to maintain an action for wrongful death against Defendants in this matter for losses and injuries stemming from the loss of their daughter.

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

**Count 5**

**Negligent Infliction of Emotional Distress**

**As Against All Defendants**

**121.**   Plaintiffs incorporate the foregoing paragraphs as fully set forth herein.

**122.**   Plaintiffs witnessed the injury and death of a closely related person, namely, their daughter.

**123.**   The Plaintiffs were in the zone of danger at the time of the collision, in the same vehicle as Serenity Spencer.

**124.**   Plaintiffs have suffered significant mental anguish that has manifested itself physically.

**125.**   As such, Defendants are liable to Plaintiffs for this negligent infliction of emotional distress.

**<u>Prayer For Relief</u>**

**WHEREFORE**, Plaintiffs pray for damages against Defendants as follows:

**1.**   For the loss of love and affection, companionship, care, protection, guidance, as well as the profound grief, sorrow, anguish, stress, shock and mental suffering already experienced and reasonably probable to be experienced in the future as a result of the death of Serenity Spencer.

**2.**   For taxable costs and pre- and post-judgment interest to the extent permitted by law.

**3.**   As against Defendant General Motors LLC, for exemplary damages to the extent permitted by law.

**4.**     For other relief as the Court deems just and proper.

DATED this 20th day of May, 2020.

SHUMWAY LAW PLLC

/s/ G Lynn Shumway
G. Lynn Shumway

and

GHELFI LAW GROUP PLLC
Brent Ghelfi

KELLY LAW TEAM, PLLC
John E. Kelly

*Attorneys for Plaintiffs*

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

27

FILED
Deanne Romo
CLERK, SUPERIOR COURT
05/20/2020  2:24PM
BY: T.BAKURZA
DEPUTY

Case No.: S0900CV202000169
HON. ROBERT HIGGINS

Person/Attorney Filing: Gary L Shumway
Mailing Address: 4647 N 32nd St, Ste 125
City, State, Zip Code: Phoenix, AZ 85018
Phone Number: (602) 795-3720
E-Mail Address: shumway@carsafetylaw.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011714, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF NAVAJO

| | |
|---|---|
| Kyle Spencer, et al.<br>Plaintiff(s),<br>v.<br>GM Motors LLC, et al.<br>Defendant(s). | Case No.<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Navajo County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.


RESPECTFULLY SUBMITTED this


By: Gary L Shumway /s/
Plaintiff/Attorney for Plaintiff

FILED
Deanne Romo
CLERK, SUPERIOR COURT
05/20/2020  2:24PM
BY: TBAKURZA
DEPUTY

Case No.: S0900CV202000169
HON. ROBERT HIGGINS

1   G. Lynn Shumway (011714)
    shumway@carsafetylaw.com
2   **SHUMWAY LAW PLLC**
    4647 N. 32nd Street, Suite 125
3   Phoenix, Arizona  85018-3345
    Telephone:  602.795.3720
4   Facsimile  :  602.795.3728

5
    Brent Ghelfi (011491)
6   BrentGhelfi@GhelfiLawGroup.com
    **GHELFI LAW GROUP, PLLC**
7   4647 N. 32nd Street, Suite 125
    Phoenix, Arizona  85018-3345
8   Telephone :  602.318.3935

9
    John E Kelly (024716)
10  john@kellylawteam.com
    **KELLY LAW TEAM, PLLC**
11  1 East Washington Street, Suite 1520
    Phoenix, Arizona 85004
12  Telephone: 602.283.4122
    Facsimile: 602.281.6881
13

14  *Attorneys for Plaintiffs*

15           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

16               **IN AND FOR THE COUNTY OF NAVAJO**

17

18  **Kyle Spencer**, an individual and statutory           No. _____
    beneficiary of Serenity Haven Spencer; and
19  **Dominecia Calderon**, an individual and
    statutory beneficiary of Serenity Haven        **DEMAND FOR JURY TRIAL**
20  Spencer,
21
                        Plaintiffs,
22
23       vs.
24  **General Motors LLC**, a Delaware limited
25  liability company; and
    **Darlene Ladonna Muder**, an individual, and
26  **Jason Muder**, husband and wife,
27
                        Defendants.
28  ─────────────────────────────
                                      1

1    Plaintiffs respectfully request a trial by jury on their claims in this matter.

2

3    DATED this 20th day of May 2020.

4                                         SHUMWAY LAW PLLC

5
                                          /s/ G Lynn Shumway
6                                         G. Lynn Shumway

7                                                  and

8
                                          GHELFI LAW GROUP PLLC
9                                         Brent Ghelfi

10                                                 and

11
                                          KELLY LAW TEAM, PLLC
12                                        John Kelly

13
                                          *Attorneys for Plaintiffs*
14

15

16
                              **CERTIFICATE OF SERVICE**
17

18   Original e-filed this 20th day
     of May, 2020 with TurboCourt:
19

20   copy of the foregoing will be
     served upon all defendants
21

22
     */s/ Theresa Varin*
23

24

25

26

27

28                                   2

**LAW OFFICE OF G. LYNN SHUMWAY**
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

1   G. Lynn Shumway (011714)
    shumway@carsafetylaw.com
2   SHUMWAY LAW PLLC
    4647 N. 32nd Street, Suite 125
3   Phoenix, Arizona  85018-3345
    Telephone:  602.795.3720
4   Facsimile   :  602.795.3728

5   Brent Ghelfi (011491)
    BrentGhelfi@GhelfiLawGroup.com
6   GHELFI LAW GROUP, PLLC
    4647 N. 32nd Street, Suite 125
7   Phoenix, Arizona  85018-3345
    Telephone  :  602.318.3935
8

9   John E Kelly (024716)
    john@kellylawteam.com
10  KELLY LAW TEAM, PLLC
    1 East Washington Street, Suite 1520
11  Phoenix, Arizona 85004
    Telepone: 602.283.4122
12  Facsimile: 602.281.6881

13  *Attorneys for Plaintiffs*

14          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15              **IN AND FOR THE COUNTY OF NAVAJO**

16

17  **Kyle Spencer**, an individual and statutory
18  beneficiary of Serenity Haven Spencer; and         No. S0900CV202000169
    **Dominecia Calderon**, an individual and
19  statutory beneficiary of Serenity Haven            **PLAINTIFFS' FIRST SET OF**
    Spencer,                                           **DISCOVERY REQUESTS UPON**
20                                                     **DEFENDANT GENERAL MOTORS**
                                                       **LLC**
21              Plaintiffs,

22      vs.

23
    **General Motors LLC**, a Delaware limited
24  liability company; and
    **Darlene Ladonna Muder**, an individual, and
25  **Jason Muder**, husband and wife,

26
                Defendants.
27

28                                       1

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona  85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

Plaintiffs, pursuant to Arizona Rules of Civil Procedure 26, 33, 34, and 36, submit their first set of discovery requests upon Defendant General Motors. As this set of discovery requests is being served contemporaneously with the summons and complaint, responses are due within sixty (60) days of service.

## Definitions

"Vehicle" refers to the white 2018 GMC Sierra K2600 SLT pickup truck, Vehicle Identification Number 1GT12TEY6JF185507, that was involved in the Collision at issue in this matter.

"Collision" refers to the crash between the Vehicle and a 2019 Toyota Corolla on November 2, 2019, that resulted in the death of Serenity Spencer.

"General Motors" refers to General Motors LLC and/or any predecessor corporation or entity.

"Forward Collision Avoidance Technology" includes all technology designed to prevent or mitigate frontal crashes; this technology includes forward collision warning or alerts, and automatic emergency braking (which includes dynamic brake supports and crash imminent braking).

## I.    Non-Uniform Interrogatories

1.     State each and every reason why General Motors chose not to make the Enhanced Driver Alert components as standard equipment on the 2018 GMC Sierra.

2

2.    Identify the prerequisites for a consumer to purchase the Enhanced Driver Alert Package (or any option package that included forward collision warning technology), for the 2016-2019 GMC Sierra and 2016-2019 Chevrolet Silverado, including the trim levels required, any prerequisite option packages, and the base prices for each of these prerequisites (including the price of the safety package itself).

3.    Identify all of the performance characteristics of your Enhanced Driver Alert Package safety options, including but not limited to detection distances and fields-of-view, warning criteria, time-to-collision warning times, and speeds for automatic braking.

4.    Identify all product recalls for the 2018 GMC Sierra and 2018 Chevrolet Silverado.

5.    Identify the suppliers for each component of the Enhanced Driver Alert Package, including the per unit cost for each component.

6.    Please identify all models and trim levels of General Motors vehicles for model years 2015 through 2018 that included any form of forward collision avoidance technologies.

7.    Please state the factual and legal basis for each affirmative defense you have alleged.

3

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

8.      For each document disclosed by any party to this matter, please identify those for which you will interpose a foundation or authentication objection at trial.

9.      Identify all persons who materially participated in all decisions as to which features of the Model Year 2018 GMC Sierra would be standard, and which would be optional, including which trim levels would have which option, and the creation of "option packages."

10.     Identify all persons who materially participated in all decisions as to the pricing of the Model Year 2018 GMC Sierra, including how optional features and packages would be priced.

11.     Identify all persons who materially participated in the design and evaluation of Forward Collision Avoidance Technology utilized in General Motors vehicles from 2010 through 2018.

4

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

12.    In its report dated May 1, 2001, the National Safety Transportation Board made the following recommendation to automobile manufacturers:

**To the Automobile Manufacturers:**

> **Develop and implement, in cooperation with the National Highway Traffic Safety Administration, the Federal Highway Administration, the Intelligent Transportation Society of America, and the truck and motorcoach manufacturers, a program to inform the public and commercial drivers on the benefits, use, and effectiveness of collision warning systems and adaptive cruise control. (H-01-14)**

*Report*, at 40. Please identify all actions by General Motors to satisfy this recommendation.

13.    Please describe all steps taken by General Motors to identify dangers or risks associated with "vehicle mismatch" collisions and reduce or mitigate the dangers or risks.

## II.    Requests to Produce

1.    Please produce all documents you reviewed or relied upon in responding to any of these discovery requests.

2.    Please produce all crash tests involving 2015-2018 Chevrolet Silverado and GMC Sierra that either are, or simulate, "vehicle mismatch" collisions. If the design of the 2018 GMC Sierra is based upon such crash tests that predate the tests requested above, please produce these earlier tests.

3.     Please produce all documents related to your answer to Interrogatory 13 regarding "vehicle mismatch" collisions.

4.     Please produce all reports, spreadsheets, or any other such document that reflects the consumer "take rate" or the purchase volume and rates for the Enhanced Driver Alert Package (or any option package that included forward collision warning technology) for all trim levels of the 2016-2019 GMC Sierra and 2016-2019 Chevrolet Silverado.

5.     Please produce all print and video advertisements for the 2018 GMC Sierra, whether for television, radio, internet sites, and/or social media.

6.     Please produce all invoices, contracts, memoranda of understanding, or any other such document reflecting General Motors' purchase of the components identified in Interrogatory No. 5, above.

7.     Please produce all reports, memoranda, and spreadsheets with respect to projected sales or take rates for the Enhanced Driver Alert option packages in the 2015-2018 GMC Sierra and Chevrolet Silverado.

8.     Please produce all studies, reports, memoranda, spreadsheets, analyses and/or the like with respect to the profit contribution per vehicle where the Enhanced Driver Alert

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

6

Package (or any option package that included forward collision warning technology) is purchased.

**III.    Uniform Interrogatories**

Please respond to the following personal injury uniform interrogatories, Arizona Rules of Civil Procedure, Form 5:

**Uniform Interrogatory No. 4**: State exactly and in detail your version of how this accident occurred.

**Uniform Interrogatory No. 5**: State specifically and in detail the facts upon which your contention is based that the accident was caused by a negligent conduct of another party, including former parties, or non-party.

**Uniform Interrogatory No. 7**: Do you know of any person who is skilled in any particular field or science, including the field of medicine, whom you may call as a witness upon the trial of this action and who has expressed an opinion upon any issue of this action? ____ If so, state:

A.    The name and address of each person.

B.    The field or science in which each such person is sufficiently skilled to enable opinion evidence in this action.

7

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ◆ Facsimile: (602) 795-3728

C.      Whether such potential witness will base his or her opinion: 1. In whole or in part upon facts acquired personally by him or her in the course of an investigation or examination of any of the issues of this case, or 2. Solely upon information as to the facts provided him or her by others.

D.      If your answer to 7(C) discloses that any such witness has made a personal investigation or examination relating to any of the issues of this case, state the nature and dates of such investigation or examination.

E.      Each and every fact, and each and every document, item, photograph, or other tangible object supplied or made available to such person.

F.      The general subject upon which each such person may express an opinion.

G.      Whether such persons have rendered written reports. ____ If so:

        1.      Give the dates of such report.

        2.      State the name and address of the custodian of such reports.

**Uniform Interrogatory No. 16**: Provide the identity and location of any nonparty identified in your response to Interrogatory No. 5 above, who you claim, pursuant to A.R.S.

8

§ 12-2506(B) (as amended), was wholly or partially at fault in causing any personal injury, property damage, or wrongful death for which damages are sought in this action.

DATED this 28th day of May, 2020.

SHUMWAY LAW PLLC

/s/ G Lynn Shumway
G. Lynn Shumway

and

GHELFI LAW GROUP PLLC
Brent Ghelfi

KELLY LAW TEAM, PLLC
John E. Kelly

*Attorneys for Plaintiffs*

LAW OFFICE OF G. LYNN SHUMWAY
4647 N. 32nd St., Suite 125
Phoenix, Arizona 85018-3345
Telephone: (602) 795-3720 ♦ Facsimile: (602) 795-3728

9

James E. Ledbetter, Esq.
State Bar No. 012788
**THE LEDBETTER LAW FIRM, P.L.C.**
1003 North Main Street
Cottonwood, Arizona 86326
court@ledbetterlawaz.com
(928) 649-8777
(928) 649-8778 Facsimile

Attorneys for Jason and Darlene Muder

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF NAVAJO

| | |
|---|---|
| KYLE SPENCER, an individual and statutory beneficiary of Serenity Haven Spencer; and DOMINECIA CALDERON, and individual and statutory beneficiary of Serenity Haven Spencer, | Case No. S0900CV202000169 |
| | **DEFENDANTS JASON AND DARLENE MUDERS' ANSWER TO PLAINTIFFS' COMPLAINT** |
| Plaintiffs, | |
| v. | |
| GENERAL MOTORS LLC, a Delaware limited liability company; and DARLENE LADONNA MUDER, an individual, and JASON MUDER, husband and wife, | |
| Defendants. | (Assigned to the Honorable Robert Higgins) |

For their Answer to the Plaintiffs' Complaint, Jason and Darlene Muder state:

1.    Mr. and Mrs. Muder deny each allegation of the Plaintiffs' Complaint, which is not specifically admitted or otherwise addressed below.

2.    Mr. and Mrs. Muder do not dispute the allegations of paragraphs 1-5.

3.    The allegations of paragraphs 6-9 relate to the Co-defendant; therefore, the Muders offer no response to the allegations of these paragraphs.

4.      Answering paragraph 10, Jason and Darlene Muder acknowledge that they are married.

5.      Answering the allegations of paragraphs 11-14, the Muders acknowledge that jurisdiction and venue are appropriate at least with respect to the claims, which are directed against them.

6.      Answering the allegations of paragraphs 15-18, the Muders deny that a strict liability claim is appropriate as to them, but the Muders acknowledge that their 2018 GMC Sierra was involved in a collision with a 2019 Toyota Corolla.

7.      The allegations of paragraphs 19-67 also do not relate to the Muders.  Accordingly, they offer no response to the allegations of these paragraphs, except to deny all claims of liability arising from the allegations and statements contained within these paragraphs.

8.      Answering the allegations of paragraphs 68-81, Darlene Muder acknowledges that she was involved in the accident of November 2, 2019.  With respect to the allegations which involve the investigating officers' conclusions, the Muders respectfully submit that references to the investigatory opinions and conclusions within an accident report are inadmissible and should not be part of a Complaint.  Therefore, the Muders preserve a motion to strike.

9.      Answering the allegations of paragraphs 82-85, the Muders, again, state the allegations of these paragraphs are part of the strict liability/manufacturing defect/failure to protect claims that are not applicable to them.  As a result, they deny any contention or

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777

suggestion of strict or manufacturing liability, as contained within these paragraphs.

10.     Answering the allegations of paragraph 86, Darlene Muder does not deny the statements she made to the investigating officer; however, preserving a motion to strike, the Muders restate that information contained within a police report is not appropriate for a Complaint.

11.     Answering the allegations of paragraphs 87-94, the Muders, again, note that the factual references and claims within these paragraphs are not directed to them.  Denying these paragraphs, they repeat and deny that strict liability could apply to them.

12.     Answering paragraph 95, the Muders reincorporate their responses to paragraphs 1-94, as though fully set forth below.

13.     The allegations of paragraphs 96-102 also involve claims, which are inapplicable to the Muders.  Therefore, the Muders deny them.

14.     Answering paragraph 103, the Muders reincorporate their responses paragraphs 1-102, as though fully set forth below.

15.     The allegations of paragraphs 104-113 also involve claims that are inapplicable to the Muders.  Consequently, the Muders deny them.

16.     Answering the allegations of paragraph 114, the Muders reincorporate their responses to paragraphs 1-113, as though fully set forth below.

17.     Answering paragraph 115, Darlene Muder acknowledges that a tragic accident occurred.  She further acknowledges that her vehicle was not equipped with an

1    enhanced driver safety package or automatic emergency braking system.

2        18.    Answering paragraph 116, the Muders acknowledge that the Plaintiffs have

3    experienced damages, as a result of the accident.  However, and while the Muders

4    sympathize with the Plaintiffs, they do not and cannot know the specific nature or extent

5

6    of the Plaintiffs' injuries.  Accordingly, they cannot admit the allegations of paragraph

7    116.

8        19.    Answering the allegations of paragraph 117, the Muders reincorporate their

9    responses to paragraphs 1-116, as though fully set forth below.

10

11        20.    Answering the allegations of paragraphs 118 and 119, the Muders

12   acknowledge that, tragically, a child died in this accident, apparently from the injuries she

13   sustained.

14        21.    The allegations of paragraph 120 set forth a legal conclusion, which the

15   Muders respectfully submit are not proper within a Complaint, and, as a result, they deny

16

17   the allegations of this paragraph, while preserving a motion to strike.

18        22.    Answering paragraph 121, the Muders reincorporate their responses to

19   paragraphs 1-119, as those fully set forth below.

20

21        23.    Answering the allegations of paragraphs 122-125, the Muders, again,

22   acknowledge that this was a terrible accident and that the Plaintiffs were in the vehicle at

23   the time of the accident.   With respect to the claims of damages, the Muders restate that

24   they do not and cannot know the full extent and nature of the Plaintiffs' claimed

25   injuries.  Therefore, they deny them at this time.

26

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777

## AFFIRMATIVE DEFENSES

24.    As an initial, affirmative defense, the Muders preserve the affirmative defense that claims set forth in the Complaint do not state claims as to them.

25.    As separate defenses, the Muders preserve the affirmative defenses of contributory negligence and comparative fault, which discovery could reveal as being applicable in this case.

26.    Discovery may reveal the existence and applicability of additional, affirmative defenses.  For the specific purposes of not waiving any defenses which are revealed or clarified through further discovery, Jason and Darlene Muder preserve those affirmative defenses, as contained as set forth within Arizona Rules of Civil Procedure 4, 8, 12 and 19.

WHEREFORE, having fully answered the Plaintiffs' Complaint, Jason and Darlene Muder respectfully request that the Complaint be dismissed as to them.  Alternatively, they seek an apportionment of fault among all parties and non-parties, pursuant to provisions of A.R.S § 12-2506, et seq.  Lastly, the Muders seek such other relief as this Court deems just and appropriate under these circumstances.

RESPECTFULLY SUBMITTED this 23ʳᵈ day of June, 2020.

THE LEDBETTER LAW FIRM, PLC

James E. Ledbetter
Attorney for Defendants
Jason and Darlene Muder

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777

Answer                                                                    5

1   **ORIGINAL** of the foregoing efiled this
2   _23rd_ **day of June, 2020 to:**

3
4   Clerk of the Court
    Navajo County Superior Court
5   100 Code Talkers Drive
    Holbrook, AZ 8602
6

7   **Copies of the foregoing mailed this**
8   _23rd_ **day of June, 2020 to:**

9
10  G. Lynn Shumway
    SHUMWAY LAW, PLLC
11  4647 N. 32nd Street, Suite 125
    Phoenix, AZ 85018-3345
12

13  Brent Ghelfi
14  GHELFI LAW GROUP, PLLC
    4647 N. 32nd Street, Suite 125
15  Phoenix, AZ 85018-3345

16

17  John E Kelly
    KELLY LAW TEAM, PLLC
18  1 East Washington Street, Suite 1520
    Phoenix, AZ 85004
19  _Attorneys for Plaintiffs_

20

21  C. Megan Fischer
22  KLEIN THOMAS & LEE
    340 East Palm Lane, Suite A310
23  Phoenix, AZ  85004
    _Attorney for Defendant_
24  _GENERAL MOTORS LLC_

25

26  _Nora Ward_

Answer                                    6

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777

1   James E. Ledbetter, Esq.
    State Bar No. 012788
2   **THE LEDBETTER LAW FIRM, P.L.C.**
3   1003 North Main Street
    Cottonwood, Arizona  86326
4   court@ledbetterlawaz.com
5   (928) 649-8777
    (928) 649-8778 Facsimile
6
7   Attorneys for Jason and Darlene. Muder
8
                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
9
                   **IN AND FOR THE COUNTY OF NAVAJO**
10

| | |
|---|---|
| 11  KYLE SPENCER, an individual and statutory<br>beneficiary of Serenity Haven Spencer; and<br>12  DOMINECIA CALDERON, and individual and<br>statutory beneficiary of Serenity Haven<br>13  Spencer, | Case No. S0900CV202000169 |
| | **DEFENDANTS' JASON AND<br>DARLENE MUDER'S DEMAND<br>FOR JURY TRIAL** |
| 13           Plaintiffs, | |
| 14      v. | |
| 15  GENERAL MOTORS LLC, a Delaware limited<br>liability company; and DARLENE LADONNA<br>16  MUDER, an individual, and JASON MUDER,<br>husband and wife, | |
| 17           Defendants. | (Assigned to the Honorable Robert<br>Higgins) |

18

19          Pursuant to Arizona Rule of Civil Procedure 38, Jason and Darlene Muder
20
21   preserve the right to a trial by jury.
22
23   / /
24   / /
25   / /
26

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777

1    RESPECTFULLY SUBMITTED this **23ᴿᴰ** day of June, 2020.

2                                                    THE LEDBETTER LAW FIRM, PLC

3

4

5                              _Unmyle #024122 for_
                              James E. Ledbetter

6                              Attorney for Defendants

7                              Jason and Darlene Muder

8    **ORIGINAL of the foregoing efiled this**

9    _23rd_ **day of June, 2020 to:**

10

11   Clerk of the Court
     Navajo County Superior Court

12   100 Code Talkers Drive
     Holbrook, AZ 8602

13

14   **Copies of the foregoing mailed this**

15   _23rd_ **day of June, 2020 to:**

16

17   G. Lynn Shumway
     SHUMWAY LAW, PLLC

18   4647 N. 32ⁿᵈ Street, Suite 125
     Phoenix, AZ 85018-3345

19

20

21   Brent Ghelfi
     GHELFI LAW GROUP, PLLC

22   4647 N. 32nd Street, Suite 125
     Phoenix, AZ 85018-3345

23

24   John E Kelly
     KELLY LAW TEAM, PLLC

25   1 East Washington Street, Suite 1520

26   Phoenix, AZ 85004
     _Attorneys for Plaintiffs_

     Demand for Jury Trial                    2

1

2   C. Megan Fischer

3   KLEIN THOMAS & LEE
    340 East Palm Lane, Suite A310
4   Phoenix, AZ 85004
    *Attorney for Defendant*
5   *GENERAL MOTORS LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Ledbetter Law Firm, P.L.C.
1003 North Main Street
Cottonwood, Arizona 86326
(928) 649-8777